Good morning, Your Honors. I'm Shannon Liss-Riordan for the Plaintiff Appellant. May I reserve three minutes of my time for rebuttal? Yes. Thank you. May it please the Court, the District Court in this case made two fundamental errors in this case. In particular, most significantly, the plaintiffs were simply not paid on a salary basis. It really cannot be disputed from the record that their pay was calculated based on the hour. They had a minimum guarantee, but this just simply is not a salary plus a bonus. It was an hourly calculation. Now, in order for this minimum guarantee to somehow equate to a salary, the defendants would really have to do some reverse math, which is simply not what they did, not what they explained to the employees. It's not what's in the evidence of the record. The reverse math would have to be, okay, your salary is $1,000 per week, plus we're going to get some extra. And the way we're going to calculate the extra is we're going to multiply all of your hours by your hourly rate, subtract out $1,000, and then that remaining amount we're going to divide by the hours you worked, and that's your new hourly rate. That math was just simply never done. It's a post hoc explanation by the defendants here and was accepted by the district court that that's what happened. In fact, the Department of Labor has expressly rejected the idea that using this type of minimum guarantee can get around, can turn something into a salary that simply is not a salary. The district court also bought into the idea that there was a difference here between hours worked and hours billed. Essentially, coming up with an idea or endorsing an idea, the defendants suggested that the way the employees were paid was something like the way associates get paid at a law firm where they get a salary and then they may get some kind of bonus for billing a lot of hours. And, in fact, the defendants in this case expressly stated they weren't paying their employees like law firms pay associates. They were paying by the hour. It wasn't that work a standard amount, you'll get your salary, and if you do really well on your billable hours, you'll get a bonus. It was that all of their pay was based on an hourly rate, which is in conflict with the basic idea and purpose behind the salary basis test. I looked at the regulation. As I understand it, the $1,000 guarantee was predetermined. At the beginning of the year, you knew it was going to be a $1,000 guarantee every month. Every week in which you performed work. Right. So it was predetermined. It seemed to me it was part of their pay. But it wasn't a salary. Their pay was based on an hourly calculation, not based on a salary plus extras. The definition of salary basis is predetermined amount, constitutes part of the compensation, and was not subject to reductions because of variations in quality or quantity. So I see it's a three-factor test. I don't see which of those factors isn't met here in spades. Predetermined, part of compensation, and not subject to reduction. Well, what's not met is 541-601, which essentially says that you can get paid based on a salary plus extras. Or you can be paid on a salary plus something like a commission or some additional amount beyond that. What we're saying here is that's not the way they were paid. But now you're losing me when you move because 541-602A is, in fact, DOL's regulation that tells us what DOL defines as salary basis. Right, but I'm talking – So my question is, do you have any argument that the definition of salary basis under 541-602A, that three-part definition, is not fully satisfied here? Well, yes. Which part? Okay, because – well, the salary part, because it wasn't a salary. There is no salary part of that definition. That is the definition of salary. It doesn't define a salary by saying a salary is a salary. It defines a salary, I believe, if I'm reading this correctly. It seems to me DOL has told us what it regards as a salary, and it's something that meets those three criteria. Well, this is really on all fours with the Claridge case from the Third Circuit, in which the Third Circuit said it's not a salary just because there's a minimum guarantee. If that's not the way the pay was calculated, it's not a salary. With my question, let me put it this way. Are you saying that any one of those three criteria that is in 541-602A is not fully satisfied here? And if so, which one of those three criteria? Or are you simply making an argument that they're all satisfied but that's not enough? Okay. What I'm saying is that it is simply an illusion to say that the way the employees were paid in this case was that they got a salary of $1,000 and then in conformance with 601 or 604 got some extras. So which one of the three criteria under 602A is not met here? Well, the idea that they're being paid based on a predetermined amount. Okay. And then they got something else. The only times the $1,000 guarantee ever came into play were the very rare occasions when they did do some work but the billings didn't bring them to above $1,000, which is exactly what happened in the Claridge case. But the reg says it doesn't say that pay has to be predetermined. It says it has to be a predetermined amount that constitutes all or part of the employee's compensation. And I thought it was undisputed here that the $1,000 a week was A, predetermined, and B was part of the employee's compensation. Well, I mean a couple of things. One is it's an after-the-fact explanation to say they were receiving $1,000 as a predetermined amount. They never received $1,000 as a predetermined amount except in the rare circumstances when they didn't meet the billings. Their pay was calculated based in a completely different way. Now you've just said that some weeks the predetermined amount, in fact I think you're saying most weeks it wasn't all of their pay. But the statute does, the reg doesn't require that. It only requires that it be predetermined, which you tell them at the beginning of the year you're going to get $1,000 minimum every week and that it be part of the pay. What am I missing? Well, I mean for one thing it's in the record that it's not like a salaried employee who gets it every week. If they didn't work at all, it appears from the record they didn't get paid. So it's not completely a predetermined amount. Secondly, again I have to go back to the Claridge case because I believe this is exactly on all fours, that it's not a salary because it's simply a minimum that kicked in extremely rarely. In that case the court noted I think something like seven times out of 60,000 pay periods did that minimum guarantee ever even come up. So it's just a post hoc explanation that their pay was based on a salary of $1,000 plus something else for which we then need to look at 601 or 604 to see whether or not it satisfies the exemption. And this is in contrast to the Second Circuit case and in Nonnie as well where the employee agreed that he was paid a salary plus some extras when he worked additional hours. The way that it was explained to him and that he understood he was being paid was on the salary basis with some extras. As the Third Circuit noted in Claridge, the fact that the employees had some confusion about how the guarantee even worked underscored the fact that their pay was simply not calculated based on a salary. So the reasoning behind 601 and if you look at 604 is that a salaried employee shouldn't have to be worrying about how many hours they work. Their importance to their employer is based more on the quality of their work. They're not being penalized for the amount of time they work or that they don't work. They can get paid some extras such as a commission or something extra that under 604, if that extra is going to be paid based on an hourly basis, the minimum guarantee has to bear some reasonable relationship to the total amount they're paid, which clearly was not met here. And the Department of Labor has also expressly supported what the plaintiffs are saying in this case. When the Department of Labor was enacting the 2004 regulations, the ones that are at issue here, and I point you to page 14 of our reply brief, it expressly rejected the idea that an employer can calculate pay based on an hourly rate and then set a minimum guarantee to, which is much lower than the regular amount that the employees receive in order to claim that there's a set that the employees are being paid on a salary basis and in order to qualify for the exemption. The Department of Labor has expressly rejected that. So I understand, Judge Picatto, that you see it perhaps as some sort of semantic issue, but it's really more than a semantic issue. The point is that the employees, I know I keep repeating this, but the employees' pay was simply not calculated based on a salary. It was calculated based on hours, hours that they worked. Now, the district court apparently seemed to think that there was some distinction. It's not on the record, but it seemed to assume that there was some distinction, like the law firm associates, between the hours actually worked and the hours billed, and again saying that really this is like a situation where the employee is getting some bonus for billing a lot of hours, which is making money for the company, even though it's not actually related to the hours that they're working. And that's not supported in the record. On page 21 of our brief, we have an excerpt from one of the plaintiff's testimony that they're paid by the hours that they work, although what Sol talked about in terms of hours that they billed, there's no evidence in the record that they were working more hours than they were billing. It was on their pay stubs that they were getting paid an hourly rate, and you only see the $1,000 on their pay stubs in those rare circumstances when the minimum guarantee kicks in. In all the other circumstances, you're not looking at $1,000 plus some extra amount. That's just a post hoc explanation in order for the defendants to try to pay the employees on an hourly basis but claim that they're salaried. And I haven't gotten to get to my second point regarding extraterritoriality, for which I had a quick point I wanted to note, if the court would let me use up one minute of my rebuttal time I reserved. All right. Do you want to do it now or later? If I could, I just would like to make this one point about the extraterritoriality issue. One minute of your time.  Thank you, Your Honor. So I will now emphasize the Taylor v. Eastern Connection case, which the defendants would say is limited to a situation where there's a choice of law provision, but if you look at the SJC's decision in Taylor, the language and the reasoning is not so limited. In fact, what it says at the end, it says that, first of all, it says that there is no extraterritorial limits on the laws at issue here. But I just want to bring the court's attention to the very last paragraph of the court's decision in which it addresses the wage and the overtime claims. And it says that it's unclear whether the choice of law provision even applies to the overtime claim. And it says whether or not the choice of law provision applies, the parties have generally not had the opportunity to present evidence regarding the application of our functional choice of law principles. So what the court is saying is that it's adopting a functional choice of law analysis as to whether Massachusetts law would apply, and it's not limited to the choice of law provision. And I'll have more to say if you have questions for me or after the defendants speak. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Sean O'Connor on behalf of the defendants' appellees. May I reserve two minutes for rebuttal? Your Honors, this case, before I begin, there are three separate issues here. There is a motion for summary judgment was granted on behalf of the defendants, a motion to amend by the plaintiffs, which was denied, as well as a separate motion for consideration, which was denied by the district court. Now, I'll begin my argument with respect to the summary judgment motion, but before I do that, let me point out and highlight to the court that if the court affirms Judge O'Toole's granting of summary judgment to the defendants, the remaining issues are actually moot in this case, as the Massachusetts overtime provisions are substantively identical to the FLSA. In effect, the Code of Massachusetts regulations expressly adopt the FLSA compensation requirements that are set in the Code of Federal Regulations. So a finding that the plaintiffs were exempt under the FLSA is, in a sense, the same as a finding that they would be exempt from overtime provisions under Massachusetts law as well. Now, with respect to the summary judgment motion, Judge O'Toole properly granted summary judgment to the defendants, finding that the plaintiffs were exempt under the highly compensated employee exemption, which was established by the Department of Labor in 2004. Now, you've heard my sister refer to a case, Claridge Hotel. That case was set forth in 1985. Not only was the highly compensated employee exemption not in effect at that time, neither was the reasonable relationship exemption under 604, which she improperly seeks to apply to this case, nor was there even regulations which allowed for a base salary plus additional compensation. Quite frankly, it deals with an entirely different set of regulations than what we are dealing with here today. Now, as Judge Kayada properly noted, here there is simply no dispute over the fact that the plaintiffs were always entitled to and received a guaranteed minimum salary of $1,000 per week that was never substituted to a reduction of any kinds based upon the hours worked, the quality of their work, nor were there any other deductions of any kind ever made. So that satisfies the fact that that part of the plaintiff's compensation was paid on a salary basis. Salary basis, as Judge Kayada properly noted, is different than a salary. And the highly compensated employee exemption only requires that at least $455 per week of total annual compensation be paid on the salary basis. Here, the plaintiffs were paid more than double that. So there simply is no dispute that they met this compensation prong of the highly compensated employee exemption. Now, as we mentioned earlier, you heard my sister refer to a reasonable relationship. That is a separate regulation that, as the Second Circuit has recently held in Anani, is entirely inapplicable to highly compensated employees like the plaintiffs. Quite frankly, that regulation deals with employees who earn less than $100,000 per year in total annual compensation. So it's entirely a red herring in this case and has nothing to do with the plaintiffs' compensation. So what's the rationale for the provision in the rule that there be a salary basis floor and that it be $455 or more? It's such a low number. So what's the point of that provision anyway? Well, I think you have to look to the initial purpose of the FLSA itself, which was to protect the lowest wage earners in society. Franklin Delano Roosevelt, when he was urging Congress to adopt the FLSA, said we need this to protect a fair day's pay for a fair day's work. And that's obviously developed over the years. There have been decades of experience that has influenced Congress's decision and the Department of Labor's rationale in how it implements its regulations. Notably, the salary basis test or compensation requirements itself are not part of the actual U.S. Code. Those are set forth entirely in the Department of Labor's regulations. So this compensation requirement, these salary basis requirements, they're the Department of Labor's interpretations. So that interpretation has developed over the years. You've seen over the years that minimum number raised from, I believe, $150 per week at some point to $250 per week to now, currently in this regulation, $455. So I'm trying to understand what possible connection there would be between the number 455 and 2014. And since I can't think of one, I'm wondering what the point of that provision is anymore anyway, if it even makes any sense. My understanding is generally, Your Honor, salary to ensure the protections that the FLSA was intended to confer on employees. Now, when it comes to the highly compensated employee, it's not just this $455 per week. You have to remember, in order to satisfy the highly compensated employee exemption, the exemption at issue here, employees also need to earn at least $100,000 per year. Here, the plaintiffs earn well more than that, over $180,000. That's actually why I was asking the question. I don't see why you would have this $455 guaranteed minimum in a regulation that's dealing with people who are ultimately paid over $100,000. I believe the concept is, Your Honor, to just provide that basic assurance. And to provide that basic assurance that there is going to be a minimum that is always going to be provided, no matter what, that you're going to receive it on a weekly basis. Because if you look to the highly compensated exemption, you'll notice that it allows for compensation of various kinds, including a so-called make-up payment by employers. So if you have a quarterly bonus system, or perhaps a yearly bonus system, that bonus, year-end bonus, could be applied to the total annual compensation threshold of $100,000. So I think that $455 per week is built in, in the exemption, so that an employee will still be assured of receiving at least that amount throughout the year, with the understanding that at the end of the day, they're going to make at least $100,000 in order to be an exempt employee. If there are no further questions on the summary judgment of the highly compensated exemption, I'm happy to move forward on to the motion to dismiss and motion to reconsider. Now, here it is important to note, again, let me highlight the fact that if the court were to affirm on the summary judgment ruling, these remaining issues are moved in this case. However, I also would urge you to find that Judge O'Toole did not abuse his discretion in denying the plaintiff's motion to amend her complaint, as well as the subsequent, over two years subsequent and after the parties had filed summary judgment motions, motion for reconsideration. With respect to the motion to amend, the plaintiffs, on their very first page, they're not trying to hide what they're doing here. What they sought and asked Judge O'Toole to do is to, and I'm reading as a quote from their motion to dismiss, quote, General Laws Chapter 151, Section A, plaintiffs allege, should apply extraterritorially to all of defendant's operations throughout the country. So what the plaintiffs are doing is they're seeking an unprecedented expansion of Massachusetts law. Essentially, what they are trying to allege and what they tried to allege before the district court was that simply being an employer who is present in Massachusetts means that you are bound by all of Massachusetts overtime and consequently other wage laws throughout all of your operations throughout the country. And I see no, there's no rationale as to why it would be limited to this country from the plaintiffs. So wherever you work, regardless of the contacts that a plaintiff may have, they are suggesting that that individual, that employee, should be allowed to bring claims under Massachusetts wage law, which, as plaintiffs are well aware, provides tribal damages and automatic attorney's fees. That's exactly what they've sought to do here, is try to, after this case was originally brought in Illinois, try to transform this case into a Rule 23 class action. The very definition of improper forum shopping with respect to the choice of law that's involved in this case. And as Judge O'Toole properly found in his motion to dismiss, there simply were no allegations of contacts with Massachusetts by the plaintiff that would permit a finding that she was subject to the protections of Massachusetts overtime law. She didn't work here. Instead, she alleged that she worked in Washington, New Jersey, and California. She didn't reside here. Instead, she alleged that she resided in Washington and New Jersey. She didn't allege that she had any contacts with Massachusetts at all. She didn't allege that there was any conduct relevant to this action that occurred in Massachusetts at all. The Massachusetts Appeals Court, following SJC's decision in Taylor, that Massachusetts Appeals Court in Dow v. Casale specifically rejected this argument, saying that it did not accept the plaintiff's proposition that an employer's presence in Massachusetts, absent any other circumstances, would permit a plaintiff, was sufficient to permit a plaintiff to bring a claim under Massachusetts law. What the plaintiffs are trying to do is an unprecedented expansion of Massachusetts law. It's both unconstitutional and improper. Now, with respect to the motion for reconsideration, Taylor simply did not represent an intervening change of law, which would warrant Judge O'Toole to have reconsidered and reversed his prior decision on the motion to amend. You've heard my sister refer to the court adopting a functional choice of law analysis. That was not an intervening choice of law, or change of law, presented by the SJC. In fact, that's been the state of law in Massachusetts for decades, back to 1985 through the Bushkin decision. That is not an intervening change of law warranting reconsideration, which again is the standard for that motion. There also was nothing in the Taylor decision which affected the district court's analysis in finding that the plaintiff, Crystal Litz, lacked sufficient contacts with Massachusetts in order to bring a claim under Massachusetts law. So with that, I posit to you that Judge O'Toole did not abuse his discretion, denying the motion to amend and denying the motion to reconsideration, and that he properly granted the defendant's summary judgment in this matter. There are no further questions. Thank you. Your Honor, just very briefly on the salary basis issue, because we are talking about Department of Labor regulations, and the court should defer to the Department of Labor in interpreting its own regulations. Again, I want to emphasize that in 2004, when the Department of Labor was promulgating these new regulations, it said, at the bottom of page 13 of our reply, if the reasonable relationship requirement were eliminated, an employer could establish a pay system that calculated exempt employees' pay based directly on the number of hours they work, multiplied a set hourly rate of pay. Employees could routinely receive weekly pay of $1,500 or more, and yet be guaranteed only the minimum $4.55, thus effectively allowing the employer to dock the employee for partial day absences. Such a pay system would be inconsistent with the salary basis concept, and the salary guarantee would be nothing more than an illusion. So to the extent there's any confusion about how these different regulations interrelate with one another, the Department of Labor has said it point blank with respect to the various circumstances we have in this case. Now if I can address quickly the choice of law and the applicability of Massachusetts overtime law here. The overtime law, and we're not right now talking about any other Massachusetts statutes, applies on its face to employers in the Commonwealth. The overtime law doesn't even refer specifically to employees in the Commonwealth,  Now of course minimum contacts would need to be satisfied for constitutional purposes. We alleged, and it was sufficient to allege, that the employer was based here, headquartered here, discovery would have unfolded, and later briefing would have determined whether there were sufficient minimum contacts. Now it was the defendant who asked to have this case transferred from Illinois to Massachusetts. It would not have been any surprise, it should not have been any surprise to defendants, that coming to Massachusetts by their own choice, where they chose to set up their operation in our headquarter, might be susceptible to, or might have Massachusetts law apply. And because the employees worked all over the country, what defendants are trying to say here is really that the law of no one state could apply. And there's no prejudice to defendants, because as my brother just stated, the substance of law of Massachusetts and the FLSA are the same in this case. The issue really is that Rule 23 would allow, if we're correct, that these employees are entitled to overtime, would allow a basis for all the employees to be paid that overtime unless they opt out. As you see noted in the record here, based on an FLSA opt-in method, the defendant was able to send a letter out and scare the employees and say don't join the case. Thank you. Thank you.